**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DOW JONES & COMPANY, INC.,           :
                                     :
          Plaintiff,                 :
                                     :
     v.                              : Civil Action No. 06-1014 (JR)
                                     :
ABLAISE LTD., *et al.*,              :
                                     :
          Defendants.                :

DOW JONES REUTERS BUSINESS           :
INTERACTIVE, LLC, d/b/a FACTIVA      :
                                     :
          Plaintiff,                 :
                                     :
     v.                              : Civil Action No. 06-1015 (JR)
                                     :
ABLAISE LTD., *et al.*,              :
                                     :
          Defendants.                :

**MEMORANDUM**

          In these related cases, plaintiffs Dow Jones & Company
and Dow Jones Reuters Business Interactive seek a declaratory
judgment that they have not infringed U.S. patents 6,961,737 and
6,295,530, held by defendant Ablaise.  Ablaise counterclaims,
alleging infringement.  Before an allegedly infringing device can
be compared to the patent claims, the Court must first determine
"the scope and meaning of the patent claims asserted."  Cybor
Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998)
(en banc) (citations omitted).  See also Markman v. Westview
Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd,

517 U.S. 370 (1996).[1]  My construction of the disputed claims and the reasons for my rulings are set forth below.[2]

## Claim Construction of the '737 Patent

(1) The word "function" in the term "storing executable functions" means an identifiable set of computer instructions.

The "ordinary and customary meaning" of the word "function" to someone of "ordinary skill in the art," Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citing Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)), is a set of computer instructions.  This construction is supported by the specification.  '737 Patent, Col. 12, 11. 46-48 ("A format function...may be considered as the smallest unit of instructions for producing a portion of HTML code.").  See also Dow Jones Reply Br., Ex. A, at 2 ("The ordinary meaning of the term "function" is a named set of instructions.").

The parties appear to agree on this point, disagreeing only on whether a function must be "named" or merely "identifiable," and whether a function must include "a set of function steps, at least one of which, when executed, creates a portion of code."  The claim itself is unclear on these points.

---

[1]A Markman hearing was held on June 6, 2007.

[2]Dow Jones has requested construction of two terms that do not require construction: the term "displayed at a browsing device" in the '737 patent, and the word "selecting" in the term "selecting a specific one of said types of formatting data in response to said formatting type identification data" in the '530 patent.

The specification for the '737 patent, however, requires only that each function be identifiable. '737 Patent, Col. 13, lines 41-45 ("At step 905 the functions required to create the particular string...are identified.").[3] Moreover, although certain functions described in the specification create portions of code, others perform different tasks, such as retrieving data from a database. Id. at Col. 15, ll. 54-58.

Dow Jones argues further that "storing executable functions" requires "storing a universal set of all available functions." In support of this view, Dow points to a passage from the specification in which the preferred embodiment is described, which states "the system as a whole includes a universal family set of all available functions." Id. at Col. 12, ll. 49-50. Dow views the inclusion of the "universal family set" as an essential feature of the preferred embodiment that must be read into the claim. The Federal Circuit, however, has "repeatedly warned against confining the claims" to specific embodiments described in the specification, Phillips, 415 F.3d at 1323 (citing cases), and has "expressly rejected the contention that if a patent describes only a single embodiment, the claims

---

[3]For the proposition that each function must have a name, Dow Jones relies on definitions from standard and computer programming dictionaries. Extrinsic sources such as dictionaries, however, "may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history." Bell Atl. Network Servs. v. Covas Commc'ns. Group, Inc., 262 F.3d 1258, 1269 (Fed. Cir. 2001).

of the patent must be construed as being limited to that embodiment." Id.  In order for the specification to be used to limit the claim as Dow Jones would have it, it must "disavow" the claim scope through "words or expressions of manifest exclusion" or "explicit disclaimers." Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1374 (Fed. Cir. 2005)(citing Housey Pharms., Inc. v. Astrazeneca UK Ltd., 366 F.3d 1348, 1352 (Fed. Cir. 2004)).  The specification of the '737 patent lacks such an indicator of applicant intent.

(2) The words "request for specified content data" in the term "in response to identifying a request for specified content data and a user identifier; (a)...(e)..." do not require construction.  The language is unambiguous within the context of the claim.  Dow, however, seeks three limitations upon the word "request."  First, Dow proposes adding the phrase "wherein the request was transmitted by a browsing device."  This addition is unnecessary, because it is redundant with language earlier in the claim ("identifying requests from browsing devices").

Second, Dow proposes that the request include "a format identifier that is separate and distinct from the user identifier."  Although claim 1 is unclear on this point - it states only that a format identifier can be "received" and does not indicate whether it must be received with the request or can come from another source - dependent claims 2, 10, and 16 offer clarity.  Those claims state that "said format identifier" is

- 4 -

"received with said request."  If a request, by definition,
already includes a format identifier, the language in claims 2,
10, and 16 would be redundant.  See Phillips, 415 F.3d at 1314
(finding that the term "'steel baffles'...strongly implies that
the term 'baffles' does not inherently mean objects made of
steel.").  Moreover, under the doctrine of claim differentiation,
the requirement in claims 2, 10, and 16 that the format
identifier is received with the request implies that the same
limitation should not be read into claim 1.[4]  Phillips, 415 F.3d
at 1315 ("[T]he presence of a dependent claim that adds a
particular limitation gives rise to a presumption that the
limitation is not present in the independent claim.").

Claim differentiation is only a guide, Curtiss-Wright
Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1380 (Fed. Cir.
2007), and "cannot be used to broaden claims beyond their correct
scope, determined in light of the specification and prosecution
history."  Multiform Desiccants, Inc. v. Medzam Ltd., 133 F.3d
1473, 1480 (Fed. Cir. 1998).  Yet neither the specification nor
the prosecution history supports Dow's limiting construction.
Although the specification teaches that, in the preferred

_____

[4]Dow Jones contends that the doctrine of claim
differentiation is not relevant, because claim 2 adds an
additional requirement that "viewable data is served to a
browser" and thus is not rendered "superfluous." Anderson Corp.
v. Fiber Composites, LLC, 474 F.3d 1361, 1369 (Fed. Cir. 2007).
Dow Jones does not extend that argument to claims 10 and 16,
however.

embodiment, a request "will include" a format identifier, '737
Patent, Col. 14, 11. 3-7, mere inclusion of a feature in the
preferred embodiment does not disavow claim scope absent "words
or expressions of manifest exclusion" or "explicit disclaimers."
Gillette Co., 405 F.3d at 1374 (Fed. Cir. 2005)(citing Housey
Pharms., Inc., 366 F.3d at 1352).  The specification for the '737
patent does not demonstrate "a clear intention to limit the claim
scope" in the manner that Dow Jones suggests, and indeed
contemplates that the format identifier could come from at least
one other possible source: a user database.  '737 Patent, Col.
15, 11. 31-34 and Col. 16, 11. 8-14.

        The prosecution history offers no additional guidance.
Dow points to a section of the history in which the applicants
distinguished their invention from prior art that did not
"teach[] serving the same text/graphic content in different
viewable page formats – depending upon receiving requests
incorporating respectively different format identifiers."  Decl.
of Brian Rosenbloom, Ex. M, Amendment, Dec. 16, 2003, at 13. When
that section is read within the context of the entire file
history, however, it is clear that the distinction the applicants
were making between their invention and the prior art centered on
the definition of "format," rather than "request."  As with the
specification, there is no "clear and unambiguous disavowal" of
the claim scope in the prosecution history.  Innova/Pure Water,

<u>Inc. v. Safari Water Filtration Sys., Inc.</u>, 381 F.3d 1111, 1124 (Fed. Cir. 2004).

Dow's third proposed limitation is that "request" means something other than "a request for a predetermined file" or "a request to retrieve and execute a specified file." As Dow points out, the specification discloses that the prior art included retrieving and executing a specified file, specifically a CGI.bin program, in response to identifying a request. '737 Patent, Col. 8, 11. 19-44. Dow contends that this section of the specification "makes clear that the invention does not include a particular feature," and so should be "deemed to be outside the reach of the claims." <u>Honeywell Intern., Inc. v. ITT Industries, Inc.</u>, 452 F.3d 1312, 1319 (Fed. Cir. 2006). That contention is rejected. The specification merely distinguishes the prior art from the applicants' invention. The specification does not criticize CGI.bin programs or claim that they would not work in conjunction with the present invention. The applicants did not "disparage" requests to retrieve and execute a specified file.

(3) The words "type of formatting" in "receiving format identifiers identifying the type of formatting required" mean a layout or presentation of text and/or graphics on a page.[5] In

_____

[5]Dow Jones proposes that "receiving" not read "looking up in a database" or "reading from a database," because, in the preferred embodiment, the format identifier is received from the request. As discussed above, however, the claim language, specification, and prosecution history leave open the possibility that the server could receive a format identifier from a source

ordinary English usage, "formatting" refers to the appearance of text or graphics on a page. A "type of formatting," then, is the layout or presentation of text and/or graphics on a page. The use of this construction in the '737 patent is supported by the specification and the prosecution history. The specification teaches that the format identifier directs the server to find and execute "particular function strings," '737 Patent, Col. 15, ll. 65-66, each of which "generate[s] a particular line of HTML code." '737 Patent, Col 13, ll. 3-4, 16-17. HTML code, the specification explains, consists of text and graphics along with "tags" that instruct the browser how to format the text or display the graphics such that "it is possible to generate a wide range of page layouts from a modest set of (HTML) tags." Id. at Col. 3, ll. 4-11. The prosecution history further clarifies the relationship between the format identifier and the "look" of the page. The applicants describe their claim as "an arrangement whereby two different clients requesting the same content data from the same server may receive differently formatted versions of the same content data depending upon a particular format identifier...." Decl. of Brian Rosenbloom, Ex. M, Amendment, Dec. 16, 2003, at 13.[6]

_____

other than the request, such as a database.

[6]Dow Jones proposed an additional limitation: that the identifier "was included in the request for specified content data." This proposal stems from Dow's position that the format

The construction proposed by Dow Jones - "indexed string for formatting functions" or "indexed function string" - would define "type of formatting" by the <u>mechanism</u> by which a particular type of formatting is created on a web page in the preferred embodiment.  As described in the specification, the format identifier directs the server to a particular set of stored functions, which, when executed, creates HTML code "on the fly."  The format identifier has two purposes in the claim: it is used for "identifying the type of formatting required" and for "selecting a set of stored functions."[7]  Dow Jones, however, proposes to give essentially the same construction to both "type of formatting" and "set of stored functions."  Dow construes the former as "indexed function string" and the latter as "a particular indexed function string."  Dow Opening Br. at 13. Under Dow's construction, those purposes would be redundant.

(4) The phrase "<u>selecting a set of stored functions in</u> <u>dependence upon a received format identifier and said read user</u> <u>information" means selecting one or more functions based upon a</u> <u>received format identifier and said read user information.</u>  "Set"

identifier must be included in the request, which has been rejected previously.

[7] Dow Jones admits as much in its Markman presentation, which states that the format identifier "<u>specifies</u> the page format because [it] <u>informs</u> the web server which formatting function should be selected to generate the page on the fly." Dow Jones Markman Presentation, June 6, 2007, at 34 (emphasis added).

- 9 -

has a plain meaning of "one or more."   As explained above, a

"function" is an identifiable set of computer instructions, and a

"type of formatting" is a layout or presentation of text and/or

graphics on a page.  Dow Jones proposes that "a set of stored

functions" means "a particular stored and indexed function

string."  This construction accurately describes the meaning of

"set of stored functions" in the preferred embodiment, but it

ignores the second, "template" embodiment, '737 Patent, Col. 11,

ll. 21-26.  Moreover, there is no indication in the specification

that the applicants attempted to limit the meaning of "function"

or disavowed any other meaning.  See Phillips, 415 F.3d at 1323

("[P]ersons of ordinary skills in the art rarely would confine

their definitions of terms to the exact representations depicted

in the embodiments.").[8]

     (5) The term "formatting data" in the phrase "executing

said set of functions to generate viewable content comprising

said selected content data and formatting data" means HTML tags,

which specify the location of text and/or graphics on a page.  As

explained above, a "type of formatting" is a layout or

---

     [8]Dow Jones also seeks to add the phrase "wherein the
selection is dependent on both a received format identifier and
said read user information, which are separate and distinct, and
the format identifier is included in said identified request for
specified content data."  Dow Jones Opening Br. at 36.  As
discussed above, although the format identifier is included in
the request under the preferred embodiment, this limitation of
the claim scope is not justified by the claim language,
specification, or prosecution history.

presentation of text and/or graphics on a page.  Within the
context of the claim, the plain and ordinary meaning of
"formatting data" is data used to create a type of formatting.
The specification teaches that this refers specifically to HTML
tags.  <u>See</u> '737 Patent, Col. 3, ll. 10-11 ("[I]t is possible to
generate a wide range of page layouts from a modest set of (HTML)
tags."); Col. 3, ll. 66 - Col. 4, ll. 1 ("HTML allows
sophisticated formatting structures to be added to the viewable
data so as to present a substantially more appealing image to
client users.").[9]

        Furthermore, although HTML tags can be used to control
both location and presentation (font, color, bold, etc.), the
claim language and prosecution history teach that the claim is
limited to formatting data that specifies location.   The
preamble to claim 1 states that a page served by the method of
claim 1 includes "formatting data which specifies location of
said text and/or graphics within a page."  <u>Id.</u> at Col. 20, ll. 1-
2.  This claim language indicates that the claim does not cover
formatting data (HTML tags) that does not specify location.  The
file history confirms this limitation.  In an amendment filed
December 16, 2004, the applicants added the same limiting

_____

        [9]Because there are no indications in the claim language,
specification, or file history that the applicants considered a
mark-up language other than HTML, Ablaise's proposed construction
that "formatting data" means "markup language, such as HTML tags"
is rejected.

- 11 -

language after the term "formatting data" in several other
claims.  In the amendment, the applicants state: "The content
data, itself, comprises text and/or graphics and these are
located within the page as specified by the formatting data.
Independent claims 2, 14, 15, and 20 have been amended to make
this even more clear."  Decl. of Brian Rosenbloom, Ex. M,
Amendment, Dec. 16, 2003, at 14.

### Claim Construction of the '530 Patent

(1) In the phrase "identifying requests from browsing
devices that define a request for specified viewable data, said
request including formatting type identification data," the term
"formatting type identification data" means data identifying a
type of formatting.  As in the '737 patent, a "type of
formatting" is a layout or presentation of text and/or graphics
on a page.  The rest of the claim language is clear and requires
no additional construction.  Dow Jones proposes two limitations
similar to those it proposed for the '737 patent.  Dow argues
that the request must include "an identifier identifying certain
viewable data and an identifier identifying a certain file
structure" but not a "request to retrieve and execute a file
identified in the request."  As with the '737 patent, those
limitations are rejected.

(2)  In the term "maintaining a plurality of formatting types of data," the phrase "formatting types of data" means "sets of HTML tags.[10]  The plain meaning of "formatting types of data" is clear when read within the context of the claim.  As in the '737 patent, formatting data refers to HTML tags, which are used to specify the location of text and/or graphics on the page. The claim states that "formatting types of data" define "corresponding predetermined formats" - in other words, a particular set of HTML tags that corresponds to a particular format.

JAMES ROBERTSON
United States District Judge

---

[10]Dow Jones further argues that "maintaining" means "storing, in a table."  Because claim 1 is a method claim, rather than an apparatus claim, a construction that limits the claim to a particular structure is only appropriate if other structures were disavowed by the applicants.  Dow Jones points to language in the specification and file history which indicates that formatting data, at least in the preferred embodiment, would be maintained in  "string list store 1103," a table within a database.  '530 Patent, Col. 15, ll. 9-12; Decl. of Brian Rosenbloom, Ex. R., Amendment, Aug 20, 1999, at 5.  Although the applicants did not disclose any other possible method for maintaining this data, none of the references cited by Dow Jones indicate that the applicants "ma[de] clear the invention does not include a particular feature," SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1341 (Fed. Cir. 2001) or limited the scope of their claim by disclaiming a particular interpretation during prosecution.  Biodex Corp. v. Loredan Biomed., Inc., 946 F.2d 850, 862 (Fed. Cir. 1991).